**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

| | | |
|---|---|---|
| **JUDY DOOLEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:04-0926** |
| | ) | |
| **JO ANNE BARNHART,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's Applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. This case is presently pending before the Court on Plaintiff's Motion for Summary Judgment and Defendant's Motion for Judgment on the Pleadings.  Both parties have consented in writing to a decision by the United States Magistrate Judge.

Judy Dooley (hereinafter referred to as "Claimant") initially filed applications for SSI and DIB on December 17, 2002 (protective filing date), alleging disability as of the same date due to varicose veins, back pain, and hiatal hernia.  (Tr. at 29, 34, 271, 277, 42-44, 266-69.)  The claims were denied initially and upon reconsideration. (Tr. at 29-32, 34-35, 271-75, 277-78.) On October 7, 2003, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 36.) The hearing was held on March 17, 2004, before Administrative Law Judge John Murdock. (Tr. at 293-326.)  By Decision dated April 28, 2004, ALJ Murdock determined that Claimant was not entitled to benefits.  (Tr. at 12-22.) The ALJ's decision became the final decision of the Commissioner on

July 23, 2004 when the Appeals Council denied Claimant's request for review. (Tr. at 6-8.) Claimant filed the present action on August 27, 2004, seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2004). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's

remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2004). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 17.) Under the second inquiry, the ALJ found that Claimant suffered from the severe impairment of chronic lumbar strain. (Tr. at 18.) At the third inquiry, the ALJ concluded that Claimant's impairment did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 18.) The ALJ then found that Claimant had the residual functional capacity to perform light exertional work activity with some sitting involved. (Tr. at 19.) As a result, Claimant could not return to her past relevant work. (Tr. at 20.) Nevertheless, the ALJ concluded that Claimant could perform jobs such as general clerk, mail clerk, and security guard, which existed in significant numbers in the national economy. (Tr. at 21.) On this basis, benefits were denied. (Tr. at 21-22.)

<u>Scope of Review</u>

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d

640, 642 (4th Cir. 1966)).  Additionally, the Commissioner, not the Court, is charged with resolving

conflicts in the evidence.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Nevertheless, the

Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the

record as a whole to determine whether the conclusions reached are rational."  Oppenheim v. Finch,

495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals that the decision of the Commissioner is supported by

substantial evidence.

Claimant's Background

Claimant was born on March 9, 1950, and was 54 years old at the time of the administrative

hearing. (Tr. at 42.)  Claimant has a high school education. (Tr. at 76.)  In the past, she worked as

an assistant manager in the fast food industry. (Tr. at 94.)

The Medical Record

The Court has reviewed the medical evidence of record and will discuss it below as

necessary.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence

because:  (1) the ALJ erred in determining that Claimant's mental impairments were not severe; and

(2) the ALJ erred in determining that Claimant was capable of performing light work.  The

Commissioner asserts that these arguments are without merit and that the ALJ's decision is

supported by substantial evidence.

1.  ALJ's Consideration of Claimant's Mental Impairments

4

Claimant first argues that the ALJ erred in determining that her mental impairments were not severe. She argues that her major depression with psychosis and social anxiety disorder are severe impairments. The Commissioner asserts that this argument is without merit.

To be deemed disabled, a claimant must have an impairment or combination of impairments which is severe, meaning that it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c) (2004). Basic work activities are the abilities and aptitudes necessary to do most jobs, including: physical functions such as sitting and standing; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. Id. § 416.921(b)(1)-(6).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a).[1] First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical

---

[1] As noted above, these Regulations were substantially revised effective September 20, 2000. *See* 65 Federal Register 50746, 50774 (August 21, 2000).

signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.

(2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.

(4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[2] Fourth, if the claimant's

---

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that an affective disorder will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and

impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

The ALJ summarized the evidence of record and noted Claimant's complaints of depression and anxiety. (Tr. at 17.)  He reviewed treatment notes and determined that Claimant's depression was a medically determinable impairment, but that it was not severe because it did not limit Claimant's ability to do basic work activities. (Tr. at 17.)  Utilizing the special technique outlined

---

(1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

above, the ALJ determined that Claimant had only mild restriction of activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation of extended duration. (Tr. at 18.)

In discussing Claimant's daily activities, the ALJ noted that she babysat her granddaughter and reported doing household chores, preparing meals, running errands, watching television, and visiting and receiving visits. (Tr. at 18, 89-93, 306.)   The ALJ found that Claimant had mild difficulties in maintaining social functioning, noting that Claimant reported in September 2003 that she saw her brother and sister at times. (Tr. at 18, 257.)  Claimant testified that she babysat her granddaughter and that she saw her daughter on a daily basis. (Tr. at 18, 306.) In a March 2003 written report, Claimant reported visiting or receiving visits from relatives on a weekly basis. (Tr. at 92.) With regard to mild difficulties in maintaining concentration, persistence, or pace, the ALJ noted that Dr. Mussleman reported in September 2003 that Claimant's attention was good. (Tr. at 18, 259.)  Additionally, Claimant reported no problems with concentration in her March 21, 2003 written report. (Tr. at 92.)  Finally, the ALJ found "no evidence to indicate the claimant has experienced any episodes of decompensation of extended duration." (Tr. at 18.)

Claimant argues that she suffered a panic attack during an intake interview at Southern Highlands Community Mental Health Center, which was documented by Ms. Shaw in her treatment notes. (Tr. at 261.)  She asserts that this, in conjunction with some comments made by Dr. Mussleman, a psychiatrist at Southern Highlands, indicate that she has severe mental impairments. Claimant notes that Dr. Mussleman found that she had "poor" sociability and that her judgment was "questionable at times." (Tr. at 259-60.)  He rated her GAF at 55, however, indicating only moderate

8

symptoms.[3] (Tr. at 260.)  Claimant does not mention the special technique nor the findings made by

the ALJ in this regard.

The evidence of record would likely support a finding that Claimant has moderate, rather

than mild, difficulties in maintaining social functioning; however, this would not result in a finding

that Claimant has a severe mental impairment and therefore would not change the outcome.

Claimant does not challenge the ALJ's findings regarding the broad areas of functioning.

Additionally, the only evidence regarding Claimant's mental impairments consists of treatment notes

from two evaluations at Southern Highlands.  Dr. Mussleman noted that Claimant used Klonopin

as necessary and that Lexapro "makes her feel much better." (Tr. at 260.)  Claimant's prognosis was

fair and she was to continue medications and therapy. (Tr. at 260.)  The ALJ further noted

inconsistencies among Claimant's reports in the record. (Tr. at 19.)  He noted that Claimant

indicated she had no friends or social outlets in July 2003, yet in March 2003 she listed a friend,

Geraldine Osborne, as a third party contact. (Tr. at 19, 262, 93.)  In determining Claimant's RFC,

the ALJ determined that Claimant's "mental limitations are not vocationally relevant since the loss

of work triggered her depression." (Tr. at 19.)  Indeed, Claimant testified that her depressive

symptoms and anxiety were made worse by not working. (Tr. at 317-18.)

The undersigned finds that the ALJ's determination that Claimant's anxiety and depression

were not severe impairments is supported by substantial evidence.  As the Commissioner notes, no

doctor indicated that Claimant had a disabling mental impairment.  Claimant does not challenge the

---

[3]  The Global Assessment of Functioning ("GAF") Scale is used to rate overall
psychological functioning on a scale of 0 to 100.  A GAF of 51-60 indicates that the person has
"[m]oderate symptoms . . . or moderate difficulty in social, occupational, or school functioning
(e.g., few friends, conflicts with peers or co-workers)." American Psychiatric Association,
Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 32 (4th ed. 1994).

ALJ's findings under the special technique, which are supported by the evidence of record. Accordingly, Claimant's argument is without merit.

2. Residual Functional Capacity

Claimant next argues that the ALJ erred in determining that she was capable of performing light work. In support of this argument, Claimant points to the report of Dr. Donatelli, a podiatrist. The Commissioner asserts that this argument is without merit.

At steps four and five of the sequential analysis, the ALJ must determine the claimant's residual functional capacity (RFC) for substantial gainful activity. "RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a)(4), 416.945(a)(4) (2004). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

The RFC determination is an issue reserved to the Commissioner. See 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2) (2004).

In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physicians' opinions. In fact, if conflicting medical

evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

Dr. Donatelli, a podiatrist, completed a report on February 27, 2004 regarding Claimant's abilities. (Tr. at 264-65.)  Dr. Donatelli opined that Claimant could not stand more than 4 hours in an eight-hour work day and could only work a full day at a "sitting" job. (Tr. at 264-65.)  He also indicated that she would have postural and environmental limitations and could not lift more than 10 pounds occasionally. (Tr. at 264-65.)

As the Commissioner notes, Dr. Donatelli is a podiatrist and is thus considered an acceptable medical source under the Regulations only for purposes of establishing impairments of the foot and ankle. See 20 C.F.R. §§ 404.1513(a)(4), 416.913(a)(4) (2004).  Dr. Donatelli did not list any medical findings to support his assessment, but presumably the limitations are due to Claimant's varicose veins.  Thus, this impairment is not one of the foot or ankle, making Dr. Donatelli an unacceptable medical source.  Additionally, Dr. Donatelli examined Claimant only on one occasion and is therefore not a treating physician whose opinion could be entitled to controlling weight. 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2).  He also failed to include any treatment notes or medical findings to support his assessment. Id.

The ALJ's determination that Claimant could perform light work which involves some sitting is supported by substantial evidence. Dr. Gobunsuy evaluated Claimant on April 16, 2003 and noted that she had no venous congestion or edema from varicose veins. (Tr. at 149-51.)  Claimant was previously prescribed TED hose stockings for varicose veins and no surgery was recommended. (Tr. at 149.)  She never had blood clots in the legs. (Tr. at 149.)  Claimant was able to walk on her heels, toes, and do heel-to-toe tandem. (Tr. at 151.)  Dr. Gobunsuy opined that Claimant may have

degenerative arthritis of the lumbar spine and at a minimum had chronic lumbar strain. (Tr. at 151.) Straight leg raising was negative. (Tr. at 151.)  Additionally, state agency physicians reviewed the record and determined that Claimant was capable of performing light work and could stand/walk about 6 hours in an eight-hour day. (Tr. at 159, 163.)

In determining Claimant's RFC, the ALJ noted this evidence, as well as evidence that Claimant reported various activities, including babysitting her three-year old granddaughter. (Tr. at 15-18.)  He further assessed Claimant's credibility and found her not entirely credible as a result of numerous inconsistent statements found in the record. (Tr. at 19.)  The ALJ limited Claimant to light work activity "with some sitting involved." (Tr. at 19.)  Thus, the ALJ accounted somewhat for Claimant's subjective complaints although he did not adopt the opinion and assessment of Dr. Donatelli.  For the reasons set forth herein, the ALJ's determination regarding Claimant's RFC is supported by substantial evidence and Claimant's argument is without merit.

Accordingly, after thorough and careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence.  By Judgment Order entered this day, the Plaintiff's Motion for Summary Judgment is **DENIED**, Defendant's Motion for Judgment on the Pleadings is **GRANTED**, the decision of the Commissioner is **AFFIRMED**, and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to send a copy of this Order to counsel of record.

ENTER: September 27, 2005.

R. Clarke VanDervort
United States Magistrate Judge

12